**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SOLOMON J. VERDIN, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-02735** |
| **TIMOTHY SOIGNET, ET AL.** | **SECTION: "R"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Solomon J. Verdin, Jr., a state inmate, filed this *pro se* federal civil rights action against Sheriff Timothy Soignet, Warden Rhonda Ledet, and April Tomlin.[1] He then amended his complaint to add Deputy Jamie, Detective Kennedy, and an unidentified female deputy as defendants.[2] He then again amended his complaint, adding Colonel Steven Bergeron, Captain Christopher Cobb, Lieutenant Jordan Darcey, and Deputy J.C. Arceneaux[3] as defendants.[4]

### April Tomlin

In his original complaint, plaintiff alleges that April Tomlin is the jail's "Medical Supervisor,"[5] and he states his claim against her as follows:

> I've Failed numerous times in the shower and From toilet Because of no medical Rails to hold on to I've got surgical hardware in my Left Foot and it stiffens and makes me Fall at times Medical Supervisor has ignored those Medical Facts and now my knees are always in excruciating pain physician only states it's authoritas which likely is more to them now.[6]

---

[1] Rec. Doc. 3.
[2] Rec. Doc. 9.
[3] Arceneaux was identified as the previously unidentified female deputy named as a defendant in first amended complaint (Rec. Doc. 9).
[4] Rec. Doc. 18.
[5] Rec. Doc. 3, p. 4.
[6] Id. at p. 6. The remaining allegations in the original complaint concern plaintiff's claim that female deputies do not announce their presence before encountering nude male inmates. Id. at pp. 4-5. However, those allegations are related to the claims against the other defendants herein, not Tomlin.

In his first amended complaint, plaintiff further alleges:

> In regards to the claim of Medical Neglectgence by Supervising Medical personnel April Tomlin a lastic Footbrace was issued to me after almost 4-Full-months of trying to seek proper medical device for my injured left Foot that Factually needs another Fusion/Surgery in which has surgical hardware within For over 10-years and counting –
>
> And recently moved me from a bottom bunk and placed me in another dormitory on the Floor whereas it placed more excruciating pain and possibly more damage not only mentally but physically as also…
>
> As I clearly illustrated to 1-of the Jails Phycisian through the Terrebonne Parish Consolidated Government, that my left injured Foot has a tendency of giving out/or being stuck it causes me to be off balance, mostly while in the wet area/shower and Toilets, I respectfully & legally requested that I be placed in a dormitory with "Medical-shower Rails and Medical Rails by toilet, to prevent Future injuries and strain on my handicapp well-being. All has been purposely ignored… All in which I'm clearly seeking present damages and Future Damages in the sum of $150,000.00 – One hundred and Fifty thousand dollars. Damages of Mental and Physical and Future …[7]

Tomlin has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[8] In that motion, she argues that plaintiff's factual allegations are insufficient to state a claim against her in her official capacity. She further argues that plaintiff's factual allegations are likewise insufficient to state a claim against her in her individual capacity and, alternatively, invokes qualified immunity with respect to any such individual-capacity claims.

Plaintiff opposes Tomlin's motion.[9] In his opposition, he argues:

> Plaintiff Solomon J. Verdin Jr. by Pro-Se comes now into this honorable court in response to defendants motion to dismiss for Failure to state a claim – Reasons and Factual Grounds why claim should not be dismissed on defendant "April Tomlin" is because #(1) April Tomlin is the Medical Supervisor at the Terrebonne Parish Criminal Justice Complex, where Medical Incident occurred where plaintiff sought-relief upon incident on 04/25/2023 before incident even occurred, by clearly and precisely stating on intake his medical needs of a Foot-

---

[7] Rec. Doc. 9, pp. 1-2 (ellipses in original). The remaining allegations in the first amended complaint concern plaintiff's claim that female deputies do not announce their presence before encountering nude male inmates. Id. at pp. 2-3. Again, however, those allegations are related to the claims against the other defendants herein, not Tomlin.

[8] Rec. Doc. 30.

[9] Rec. Doc. 42.

> Brace and medical-rails in the shower and toilets to hold on to Because he has surgical hardware in his left Foot and his Foot stiffens at times and he'll fall causing more injury of plain-humiliation etc., however none of this was acknowledged professionally nor in a timely Fashion intill after several Falls, which caused more excruciating pain, and 4-months later then Finally given a Foot-Brace, which plaintiff was immediately transferred after.
>
> Because of the Deliberate ignorance of medical-brace For Foot For over 4-months, and still no-rails in shower nor For toilets after several Falls Plaintiff "Shall" be granted Relief of a Fair amount of monetary Funds For his past endurance of pain and suffering because of Medical Neglectgence and Deliberate indiffence …[10]

In ruling on a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation, footnote, and quotation marks omitted). Further, where, as here, a defendant invokes qualified immunity in a motion to dismiss, "[t]he crucial question is whether the complaint pleads facts that, if true, would permit the inference that [the defendant is] liable under § 1983 and would overcome [her] qualified immunity defense. It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." Terwilliger v. Reyna, 4 F.4th 270, 280 (5th Cir. 2021) (citation, quotation marks, and ellipsis omitted). Specifically: "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to plead specific facts to overcome the defense." Id. at 284.

[10] Id. at pp. 1-2 (ellipsis in original).

Tomlin is clearly correct in arguing that plaintiff has failed to state an official-capacity claim against her. "Official-capacity suits may be brought **only against an official acting as a policymaker**, such that [her] decisions represent the official policy of the local government unit." Guillot *ex rel.* T.A.G. v. Russell, 59 F.4th 743, 750 (5th Cir. 2023) (emphasis added). Here, plaintiff has not alleged that Tomlin is a policymaker – a fundamental flaw in his official-capacity claim against her. See Kimble v. Jefferson Parish Sheriff's Office, No. 22-30078, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023). Such policymaking authority cannot be inferred from the mere fact that Tomlin has the discretion to perform some actions and make some decisions. See Martinez v. City of North Richland Hills, 846 F. App'x 238, 246 (5th Cir. 2021) ("There is a fundamental difference between decision makers and policymakers. Discretion to exercise a particular function does not necessarily entail final policymaking authority over that function." (quotation marks omitted)).

Moreover, even if Tomlin is a policymaker, any official-capacity claim against her still falls short for another reason. Specifically:

> A claim against government officials in their official capacity is a *de facto* suit against the local government entity of which the officials act as agents. Section 1983 does not allow recovery under a theory of *respondeat superior*; a plaintiff must show that the local government's policy or custom violated the plaintiff's constitutional rights.
>
> The custom or policy must serve as the moving force behind the constitutional violation at issue. Alternatively, the plaintiff must demonstrate that his injuries result from the policy's execution. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Guillot *ex rel.* T.A.G., 59 F.4th at 751-52 (citations, quotation marks, and brackets omitted). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993). Rather,

he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F. App'x 315, 316 (5th Cir. 2003). Because plaintiff does not allege, much less identify, a policy or custom which allegedly caused the deprivation of his constitutional rights, any official-capacity claim against Tomlin also fails on that basis. See Kimble, 2023 WL 1793876, at *3; Dantin v. Larose, Civ. Action No. 18-11233, 2018 WL 7499824, at *2 (E.D. La. Dec. 28, 2018), adopted, 2019 WL 969990 (E.D. La. Feb. 28, 2019).

Plaintiff's individual-capacity claims against Tomlin fare no better for the following reasons.

First, plaintiff's individual-capacity claims cannot succeed because he fails to include adequate factual allegations as to one of the required elements of his claims. As noted, plaintiff alleges that Tomlin is the jail's "Medical Supervisor,"[11] and his claims against her concern matters related to his medical condition. However, an inmate's constitutional right to medical care is limited in scope. Specifically, regardless of whether the inmate is a pretrial detainee or a convicted prisoner, his federal constitutional rights with respect to medical care are violated only if his **serious medical needs** are met with **deliberate indifference** on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). In her motion, Tomlin does not expressly dispute

[11] Rec. Doc. 3, p. 4.

that plaintiff's medical needs are serious ones. Therefore, for the purposes of this decision, the Court will simply assume that they are.

Tomlin does, however, argue plaintiff has not adequately alleged that she has acted with "deliberate indifference." Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

As a preliminary matter, the Court notes that plaintiff references purported "Medical Neglectgence" [sic] in both his first amended complaint and in his opposition to Tomlin's motion.[12] However, to the extent that plaintiff means "negligence," it is clear that "[n]egligence and mistakes during treatment do not constitute deliberate indifference." Thompson v. Texas Department of Criminal Justice, 67 F.4th 275, 281 (5th Cir. 2023); accord Dyer v. Houston, 964 F.3d 374, 381 (5th Cir. 2020) ("Our cases have consistently recognized … that deliberate

---

[12] Rec. Doc. 9, p. 1; Rec. Doc. 42, p. 2.

indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." (quotation marks omitted)). Simply put, "negligent medical care does not constitute a valid section 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Rather, claims of negligence or medical malpractice arise under **state law**. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

Further, although plaintiff also expressly references "deliberate indiffence" [sic] in his opposition to Tomlin's motion,[13] Tomlin argues that plaintiff's supporting factual allegations are insufficient to state a claim of deliberate indifference. She is correct.

As already noted *supra*, in order to survive a motion to dismiss, a "plaintiff must plead **sufficient facts** to state a claim to relief that is **plausible on its face**." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (emphasis added; quotation marks omitted). Regarding that requirement, the United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

[13] Rec. Doc. 42, p. 2. Because plaintiff is proceeding without counsel in this matter, this Court must consider his "complaint under the less stringent standards applicable to *pro se* litigants." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983). Therefore, the Court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Id. Accordingly, because the allegations in plaintiff's opposition embellish the complaint's averments, they may be considered when ruling on the Tomlin's motion. Id.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).  Here, plaintiff has not pleaded sufficient facts to support a reasonable inference that **this defendant**, Tomlin, acted unlawfully in any way, much less with deliberate indifference.

Specifically, plaintiff complains that (1) he has been housed in areas lacking shower and toilet rails and (2) he was not initially provided with a foot brace.  However, he has not adequately alleged that Tomlin was personally involved in or in any way personally responsible for either of those purported violations.[14]  As to the former complaint, he does not allege that Tomlin had any personal involvement in his housing assignment or had any authority to order officials to make any physical alterations to the facility, such as installation of shower or toilet rails.  As to the latter complaint, he does not allege either that the jail physician had prescribed a foot brace or that Tomlin had the authority to provide a foot brace absent a doctor's order.  Therefore, as to Tomlin, plaintiff's factual allegations fall far "short of the line between possibility and plausibility of entitlement to relief," and so they are insufficient to state a claim under Iqbal.

Second, in any event, plaintiff's individual-capacity claims also fail for a separate and independent reason:  he has not overcome Tomlin's assertion of qualified immunity.  "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."  Cope v. Cogdill, 3 F.4th 198, 204 (5th Cir.

---

[14] Out of an abundance of caution, the Court notes that the mere fact that Tomlin is (at least according to plaintiff) the jail's "Medical Supervisor" is of no consequence if she was not personally involved in these matters.  In a § 1983 action, "[p]ersonal involvement is an essential element of a civil rights cause of action," Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983), and such involvement must be specifically alleged.  Accordingly, a defendant is liable only for her own failures, not for those of others – not even those of her subordinates.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit ... – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Sanchez v. Young County, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations … if they had no personal involvement."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

2021) (quotation marks omitted).  "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Because Tomlin asserted qualified immunity in her motion to dismiss, "[t]he crucial question is whether the complaint pleads facts that, if true, would permit the inference that [the defendant is] liable under § 1983 and would overcome [her] qualified immunity defense.  It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." Terwilliger v. Reyna, 4 F.4th 270, 280 (5th Cir. 2021) (citation, quotation marks, and ellipsis omitted).  Specifically:

> When a defendant invokes qualified immunity, the burden shifts to the plaintiff to plead specific facts to overcome the defense.  To discharge this burden, plaintiffs must successfully allege that the defendants violated a statutory or constitutional right, and that the right was "clearly established" at the time of the challenged conduct.  To be "clearly established" for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what [she] is doing violates that right.

Id. at 284 (citations, quotation marks, ellipsis, and brackets omitted).

The Court can easily dispose of the claims against Tomlin on that "clearly established" prong of the qualified immunity analysis.  Regarding that prong, the United States Fifth Circuit Court of Appeals has explained:

> We are bound by the restrictive analysis of "clearly established" set forth in numerous Supreme Court precedents.  A right is "clearly established" if it is "one that is sufficiently clear that every reasonable official would have understood that what [she] is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks and citation omitted).  Courts must not "define clearly established law at a high level of generality"; instead, their "inquiry must be undertaken in light of the specific context of the case." Id. at 12, 136 S.Ct. 305 (internal quotation marks and citations omitted).  Therefore, unless existing precedent "squarely governs" the conduct at issue, an official will be entitled to qualified immunity. See Brosseau v. Haugen, 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); Mullenix, 577 U.S. at 12, 136 S.Ct. 305 (emphasizing that "[t]he dispositive question is

> whether the violative nature of particular conduct is clearly established" (internal quotation marks and citation omitted)).
>
> Generally, to satisfy this standard, the plaintiff must "identify[ ] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and ... explain[ ] why the case clearly proscribed the conduct of that individual officer." Joseph *ex rel.* Estate of Joseph v. Bartlett, 981 F.3d 319, 345 (5th Cir. 2020) (concluding the defendants were entitled to qualified immunity because the plaintiffs failed to identify an analogous case). While an exact case on point is not required, the confines of the officers' violation must be "beyond debate." Baldwin v. Dorsey, 964 F.3d 320, 326 (5th Cir. 2020) (internal quotation marks and citation omitted), cert. denied, ––– U.S. ––––, 141 S. Ct. 1379, 209 L.Ed.2d 123 (2021) (mem.). Broad general propositions are not enough to overcome qualified immunity. Id.

Cope v. Cogdill, 3 F.4th 198, 204-05 (5th Cir. 2021)

On the "clearly established" prong of the qualified immunity analysis, "[t]he critical consideration is 'fair warning': the specific right must have been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of [her] conduct." Trevino v. Hinz, 751 F. App'x 551, 554 (5th Cir. 2018) (quotation marks omitted). In other words, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that **what [she] is doing** violates that right." Mullenix v. Luna, 577 U.S. 7, 11-12 (2015) (emphasis added; quotation marks omitted).

Here, again, plaintiff has not alleged that Tomlin (1) had any personal involvement in his housing assignment, (2) had any authority to order officials to install shower or toilet rails, (3) disregarded a jail physician's prescription of a foot brace, or (4) had the authority to provide a foot brace absent a doctor's order. Further, he has not identified a case or body of case law finding a constitutional violation by a person who – without alleged personal involvement or authority – acted similarly in sufficiently analogous circumstances. Because plaintiff has failed to identify a Supreme Court or Fifth Circuit case (or a "robust consensus of persuasive authority") that would

have notified Tomlin that her conduct clearly constituted deliberate indifference, "[t]hat alone dooms [his] case here." Trevino, 751 F. App'x at 555 (quotation marks omitted); accord Vann v. City of Southaven, 884 F.3d 307, 310 (5th Cir. 2018).

For all of these reasons, Tomlin's motion to dismiss should be granted.

**Deputy Jamie**

Plaintiff added Deputy Jamie as a defendant in the first amended complaint, identifying her as "Deputy Jamie (Female) Deputy at the Terrebonne Jail."[15] Accordingly, the Clerk of Court issued a summons directed to "Deputy Jamie."[16] An officer of the United States Marshal's Service then attempted to serve that summons at the Terrebonne Parish Jail; however, the officer returned the summons unexecuted, stating, "I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above."[17] Accordingly, the undersigned issued an Order stating:

> The United States Marshal was unable to serve "Deputy Jamie" based on the information plaintiff provided. See Rec. Doc. 22. It is plaintiff's responsibility to provide all information necessary for the United States Marshal to effect service. Accordingly, **IT IS ORDERED** that, on or before **November 30, 2023**, plaintiff provide the Court with (1) Deputy Jamie's full name and (2) the address at which that defendant can be served. If plaintiff fails to comply with the Court's order and fails to show good cause for not doing so, plaintiff's claims against Deputy Jamie may be dismissed pursuant to Fed. R. Civ. P. 4(m).[18]

**Plaintiff did not respond to that Order.** Therefore, for the following reasons, the claim against Deputy Jamie should be dismissed.

In pertinent part, Rule 4(m) provides:

---

[15] Rec. Doc. 9, p. 3.
[16] Rec. Doc. 10, pp. 1-2.
[17] Rec. Doc. 22.
[18] Rec. Doc. 25.

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – **must** dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added).

Plaintiff was granted pauper status in this lawsuit.[19] Therefore, he was entitled to have service effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). That fact, however, does not relieve plaintiff of all responsibility regarding service. Rather, "[a]t a minimum, a plaintiff should request service upon the appropriate defendant and **attempt to remedy any apparent service defects of which a plaintiff has knowledge**." Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987) (emphasis added). Dismissal is appropriate when service has not been properly effected due to the inaction or dilatoriness of a plaintiff proceeding *in forma pauperis*. Id.

Here, the Rule 4(m) deadline has expired, and, despite the passage of that extensive period of time, plaintiff has not provided this Court or the United States Marshal with the information necessary to effect service on "Deputy Jamie." The Court gave plaintiff notice of the fact that "Deputy Jamie" was not served, as well as an opportunity to cure that defect. Nevertheless, he has not cured the defect by providing the necessary service information, and, as a result, the United States Marshal cannot effect service. Therefore, the failure to serve "Deputy Jamie" results not from the actions or inactions of the Court or the United States Marshal, but rather solely from the inaction and dilatoriness of plaintiff.

Despite being given express notice that his claims against "Deputy Jamie" could be dismissed unless plaintiff provided the required information or showed good cause for failing to

[19] Rec. Doc. 5.

do so, plaintiff failed to respond to the Court's notice. Accordingly, dismissal of those claims is now appropriate. See, e.g., Gipson v. Keith, 678 F. App'x 264, 266 (5th Cir. 2017); Triplett v. LeBlanc, 642 F. App'x 457, 459-60 (5th Cir. 2016); Armant v. Stalder, 351 F. App'x 958, 959 (5th Cir. 2009); Pines v. St. Tammany Parish Prison, Civ. Action No. 09-3113, 2009 WL 3347384, at *1-2 (E.D. La. Oct. 14, 2009).

**Remaining Defendants**

Plaintiff and the remaining defendants (Sheriff Timothy Soignet, Warden Rhonda Ledet, Colonel Steven Bergeron, Captain Christopher Cobb, Lieutenant Jordan Darcey, and Deputy J.C. Arceneaux, and Detective Kennedy) have filed a joint motion seeking dismissal of all claims against the remaining defendants with prejudice.[20] Because the parties agree that resolution is warranted and seek it jointly, all claims against Sheriff Timothy Soignet, Warden Rhonda Ledet, Colonel Steven Bergeron, Captain Christopher Cobb, Lieutenant Jordan Darcey, and Deputy J.C. Arceneaux, and Detective Kennedy should indeed be dismissed with prejudice. See Fed. R. Civ. P. 41(a); Datamonitor Systems LLC v. International Business Machines Corp., No. W-22-CV-00964, 2023 WL 443808 (W.D. Tex. Jan. 26, 2023), adopted, 2023 WL 3035389 (W.D. Tex. Feb. 13, 2023); Adame v. Corpus Christi Independent School District, Civ. Action No. 2:15-CV-262, 2016 WL 6305250 (S.D. Tex. Mar. 31, 2016).

**RECOMMENDATION**

It is therefore **RECOMMENDED** that the motion to dismiss filed by April Tomlin, Rec. Doc. 30, be **GRANTED** and that the claims against her be **DISMISSED WITH PREJUDICE**.

[20] Rec. Doc. 44.

It is **FURTHER RECOMMENDED** that plaintiff's claims against "Deputy Jamie" be **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 4(m).

It is **FURTHER RECOMMENDED** that the joint motion to dismiss filed by plaintiff and defendants Sheriff Timothy Soignet, Warden Rhonda Ledet, Colonel Steven Bergeron, Captain Christopher Cobb, Lieutenant Jordan Darcey, and Deputy J.C. Arceneaux, and Detective Kennedy, Rec. Doc. 44, be **GRANTED** and that all claims against those defendants be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 16th day of January, 2024.

Janis van Meerveld
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**